IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CHARLES COBOS and LUANA DUTCHOVER,<br><br>    Plaintiffs,<br>vs.<br><br>RICHARD T. HOOVER and CITY OF ROSWELL,<br><br>    Defendants. | No. 97-0138 PK/JHG |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant City of Roswell's Motion for Summary Judgment filed September 2, 1998 (doc. 24), and the court, being fully advised in the premises, finds that the motion is well taken and should be granted in favor of the City on all of Plaintiffs' claims. Plaintiffs have not demonstrated a genuine issue of material fact necessary for the imposition of municipal liability, specifically that their federal constitutional or statutory rights were deprived due to an official policy or custom of the Defendant City of Roswell.

Background

In this civil rights action pursuant to 42 U.S.C. § 1983, Plaintiffs seek compensatory and punitive damages, as well as attorney's fees and costs. Plaintiffs were both employees of the Roswell Municipal Court. In March 1994, Defendant Hoover was elected municipal judge, replacing the incumbent. In March 1996, Defendant Hoover was removed from office by the New Mexico Supreme Court based upon numerous incidents of improper judicial conduct toward litigants, his court staff and persons attending court. See Plaintiffs' Response to City of Roswell's Motion for Summary Judgment filed September 2, 1998 (Plaintiffs' Response), exh. 2 (doc. 26).

The municipal court is established by state law, and municipal judges are elected in non-partisan municipal elections. See N.M. Stat. Ann. §§ 35-14-1(A), 35-14-4(A) (Michie 1996 Repl. Pamp.). Municipal courts are inferior courts subject to superintending control by the Supreme Court and supervisory control by the district court. See N.M. Const., art. VI, §§ 3, 13. With certain exceptions, the Code of Judicial Conduct applies to municipal judges and plainly prohibits the type of discriminatory activity alleged in the complaint. See N.M. Code of Judicial Conduct, §§ 21-300(C)(1) & (4); 21-901(A).

In Roswell, all employees of the municipal court were supervised by the municipal judge, and the city had no direct relationship to the municipal court in an administrative capacity. Neither the City nor the city manager had any

supervisory authority over the municipal judge.  This is consistent with the New Mexico Constitution, art. III, and case law holding, based upon constitutional separation of powers, that municipal court judges have the authority to supervise municipal court employees.  See Mowrer v. Rusk, 618 P.2d 886, 892-93 (N.M. 1980).  Mowrer also holds that municipal court judges also have the authority to hire and discharge.  See id.  These powers cannot be eliminated by municipal governments, and court employees may not be included in a general merit system.  See id. at 893.  Nor can a municipal government require a municipal court to submit its budget to the executive branch as a condition precedent to submission to the legislative branch.  See id. at 894.

Mowrer recognized that some overlap may occur in government functions without violating separation of powers.  See id. at 891.  Defendant City of Roswell did provide certain support functions to the municipal court through a de facto arrangement whereby municipal judges agreed that municipal court employees would be city employees in return for the City handling certain functions such as payroll, insurance and retirement.  See Plaintiffs' Response, Capps depo. at 9-10 (doc. 26).  The municipal court participated in the City's budgeting process, with approval of the budget by the city council, so the number of municipal court employees was a function of the City's budget.  Ultimate hiring authority for city employees was exercised by the city manager, but a municipal judge, like a department head in the other non-judicial departments,

would request the employment of a particular person and the city manager routinely approved such requests. Defendant Hoover and the city manager spoke about personnel matters from time to time and the city manager ultimately transferred Plaintiff Cobos to another city position after he successfully appealed a reprimand issued by Defendant Hoover.

The first formal complaint the city manager received about Defendant Hoover was a sexual harassment complaint by Plaintiff Dutchover on August 31, 1994. After an investigation, the city manager contacted the district attorney's office to inquire about a criminal investigation and removal. He also sought guidance from the New Mexico Judicial Standards Commission, ultimately filing a formal complaint against Defendant Hoover on October 3, 1994. During the pendency of that complaint, in January 1995, the city manager transferred supervisory authority over the court's employees to the city's administrative services manager. The city manager acted based upon "necessity" rather than legal authority with the hope that Defendant Hoover would acquiesce. Instead, Defendant Hoover through counsel insisted upon his rights, and supervisory authority was transferred back to him.

## Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An important function of summary judgment is to eliminate factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmovants may not rest upon their pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Once the movant has identified an element of a claim that the nonmovants cannot prove, all other factual disputes concerning the claim become immaterial and summary judgment is properly entered. See Celotex, 477 U.S. at 322-23. The summary judgment material relied upon by the nonmovants is viewed in the light most favorable to them; however, that material must contain significantly probative evidence that would allow a trier of fact to find in their favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Plaintiffs seeking to hold a municipality liable pursuant to § 1983 must (1) identify a policy or custom that resulted in the plaintiffs' injury, and (2) "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Comm'rs v. Brown, 117 S. Ct. 1382, 1388 (1997). Vicarious liability, including respondeat superior, is not a proper basis for municipal liability. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986). Thus, a municipality will not be held liable merely because it employed or was associated with a tortfeasor, be it an employee or

agent.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 690-95 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. at 694.  Municipal liability is only appropriate where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur, 475 U.S. at 483-84 (plurality opinion).  In short, municipal liability under § 1983 is fault-based.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985) (plurality opinion).

Whether an official is a final policymaker for the municipal function under challenge depends upon applicable state law.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 124-27 (plurality opinion).  The actions of Defendant Hoover are the predicate of the Plaintiffs' municipal liability claims.  The Plaintiffs contend that because Defendant Hoover had supervisory authority over municipal court employees pursuant to New Mexico law and exercised that authority, he determined City policy or custom:

> It is immaterial what other city officials who were helpless to address his actions did or failed to do because Hoover established the custom or policy for the City as applicable to these claims.  In light of this reality, the link between the actions of the municipality and Judge Hoover is direct.

Plaintiffs' Response at 1 (doc. 26).  Thus, this case does not involve questions of

whether policymaking authority has been delegated from the city council to the municipal judge. Instead, according to Plaintiffs, the elected municipal judge derived his policymaking authority from the elected office and state law. See Familias Unidas v. Briscoe, 619 F.2d 391, 403-404 (5th Cir. 1980) (where elected county executive official is alone the final authority, county may be held liable under § 1983).

The issue is whether Defendant Hoover's "edicts or acts may fairly be said to represent official policy" thereby binding the City. Monell, 436 U.S. at 694. The court concludes that Defendant Hoover's actions cannot be said to represent the official policy of the City for three reasons. First, while it is true that supervisory authority over municipal court employees vested in the municipal judge rather than the City, the fact remains that those employees were city employees, were treated like other city employees and entitled to the protections of the personnel system. See Plaintiffs' Response at 2 (¶ A) (doc. 26). Inherent in this arrangement were some constraints upon Defendant Hoover and some review of his personnel decisions by the City, although not to the extent desired by Plaintiffs.[1] See Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995) (discussing factors indicative of a policymaker for municipal liability). For example, Plaintiff Dutchover made a sexual harassment complaint and Plaintiff

---

[1] Apparently, Plaintiffs were able to complain to the Judicial Standards Commission. See Plaintiffs' Response at 6 (¶ O) (doc. 26).

Cobos appealed his reprimand to the City and was transferred.

This arrangement resulted from municipal judges granting the City some authority over personnel matters in exchange for being relieved from various support functions. While the court is required to look to state law and may not assume that policymaking authority lies elsewhere, see Praprotnik, 485 U.S. at 126 (plurality opinion), there is no dispute that this was the arrangement. While acknowledging the potential for greater municipal judge authority, the city manager viewed Defendant Hoover as similar to one of forty department heads when it came to hiring personnel and the city manager retained ultimate hiring authority. See Plaintiffs' Response, Capps depo. at 8-10 (doc. 26).

In Williams v. Butler, 863 F.2d 1398 (8th Cir. 1988) (en banc), the court held that the City of Little Rock was liable under § 1983 when an elected municipal judge fired a clerk for reporting destruction of traffic tickets to police. See id. at 1399, 1403. The court stressed that the case involved an absolute delegation of authority and its exercise by the municipal judge. See id. at 1402. The fired clerk had no recourse from the personnel decisions of the judge. See id. The court stressed "that an incomplete delegation of authority–i.e., the right of review is retained–will not result in municipal liability, whereas an absolute delegation of authority may result in liability on the part of the municipality." Id.

The case before the court is more analogous to an incomplete delegation

than an absolute delegation.  Although there were some limits on the City's right to remediate, some review of Defendant Hoover's personnel decisions was possible and did occur.  Unlike Williams, it cannot be said that the City's involvement with personnel matters was "minimal," particularly after the City was apprized of personnel problems.  See id. at 1399.

In Eggar v. City of Livingston, 40 F.3d 312 (9th Cir. 1994), the court determined that City of Livingston, Montana was not liable for a city judge's denial of rights to indigent defendants because the judge's responsibility emanated from membership in the state judiciary and he functioned as a state judicial officer.  Id. at 315-16.  Admittedly, Eggar involved a judge functioning in his judicial capacity, and the court acknowledged that a municipality could be liable "if the judge holds absolute sway over particular tasks."  Id. at 315, 316 n.7.

Even though this case involves a judge performing administrative functions, Eggar is informative because it recognizes the problem of attributing municipal policymaker status to a judge when the judge is regulated by and trained[2] under auspices of the state judiciary and the city lacks the power to completely remedy a situation.  See id. at 316 ("A municipality cannot be held

---

[2] Defendant Hoover attended training for municipal judges including judicial conduct, the Code of Judicial Conduct and gender bias.  See Plaintiffs' Response, exh. 2, Report of the Special Masters at 2 (doc. 26).

liable for judicial conduct it lacks the power to require, control or remedy . . . ."). The municipal court is established by state law, not by charter. See Mowrer, 618 P.2d at 894.

Plaintiffs rely upon Starrett v. Wadley, 876 F.2d 808 (10th Cir. 1989), to support municipal liability for an elected official. In that case, the court held that a county was liable under § 1983 for a termination because the elected county assessor, later removed from office, had final policymaking authority to hire and fire. See id. at 818-819. Starrett is distinguishable because the assessor exerted full and direct control; here, both the City and Defendant Hoover made personnel decisions. Moreover, in Starrett the Board of County Commissioners apparently viewed itself as powerless to oppose the assessor's practices.

Second, Plaintiffs' case against the City founders on principles of fault and causation. Far from officially sanctioning, ordering or condoning the practices of Defendant Hoover, the City took prompt action to investigate and disapprove such practices, including filing a complaint with the Judicial Standards Commission that ultimately resulted in his removal. It must be remembered that Defendant Hoover was not a city employee, subject to the direction and control of the City. Although the City attempted to assume supervision of the municipal court employees, it was unable to do so given that another branch of government was constitutionally responsible for Defendant Hoover's behavior and controlling legal authority did not support assumption of supervision. See Mowrer, 618 P.2d

at 890-91 ("Any action of the executive or legislative branch of the municipal government which would preclude the Supreme Court or the district court from exercising its superintending or supervisory authority over the municipal court violates Article III and Article VI, Sections 3 and 13 of the New Mexico Constitution."). The City could not usurp the functions of the Supreme Court or ignore its precedent. See Aguilar v. City Comm'n, 940 P.2d 181, 183 (N.M. Ct. App. 1997). Even in the light most favorable to the Plaintiffs, the evidence will not support the notion that the City engaged in deliberate conduct that could somehow be the moving force behind the civil rights violation alleged by the Plaintiffs. See Brown, 117 S. Ct. at 1389.

Third, given the City's opposition to Defendant Hoover's policies and its attempts to remove him, Plaintiffs are left with nothing more than vicarious liability based upon association. This has been rejected repeatedly as a proper basis for municipal liability.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendant City of Roswell's Motion for Summary Judgment filed September 2, 1998 (doc. 24) is GRANTED.

DATED this 24th day of September, 1998 at Oklahoma City, Oklahoma.

_____
Paul Kelly J.
United States Circuit Judge
Sitting by Designation

Counsel:

Ray Twohig, Albuquerque, New Mexico, for Plaintiffs.

Steven L. Bell and Barbara A. Reddy, Atwood, Malone, Turner & Sabin, P.A., Roswell, New Mexico, for Defendant City of Roswell.